IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO.: 7:12-CV-00286-FL

| | |
|---|---|
| LARRY COMMEDO, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant ) <br> ─────────────────────────── ) | **MEMORANDUM &** <br> **RECOMMENDATION** |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings. (DES 19, 21). The time for filing any responses or replies has expired, and, therefore, the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 19) be GRANTED, that Defendant's Motion for Judgment on the Pleadings (DE 21) be DENIED, and that the Defendant's final decision be vacated and remanded for further proceedings

## I. STATEMENT OF THE CASE

Plaintiff protectively filed for disability insurance benefits on May 28, 2008, alleging a disability beginning on February 1, 2004. (Tr. 8–19). His claim was denied initially and upon reconsideration. *Id*. A hearing was held before an Administrative Law Judge ("ALJ") who, in a decision dated August 13, 2010, determined that Plaintiff was not disabled. *Id*. The Social Security Administration's Office of Disability Adjudication and Review Appeals Council ("AC")

denied Plaintiff's request for review on June 7, 2012, thus making the ALJ's decision the final decision in this matter. *Id*. at 1–3. Plaintiff appealed that decision to this Court on September 28, 2012 (DE 1).

## II. STANDARD OF REVIEW

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . .

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

2

**III. ANALYSIS**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his injury onset date, February 1, 2004, through his date last insured, December 31, 2008. (Tr. 10). At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus; hypertension; degenerative joint disease in the knees; polyneuropathy; cardiomyopathy; obstructive sleep apnea; obesity; and depression. *Id*. However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 11. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the light work as defined in 20 C.F.R. 404.1567(b), with limitations. *Id*. at 13. These limitations include findings that Plaintiff is limited to lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently;

sitting for up 6 hours in an 8-hour workday with normal breaks; and standing or walking for up to 6 hours in an 8-hour workday with normal breaks. *Id*. Plaintiff was also found to be able to perform simple, routine and repetitive tasks in a low stress environment with occasional production and occasional interpersonal demands. *Id*. The ALJ also determined that Plaintiff was not capable of performing past relevant work. Considering Plaintiff's age, education, work history and RFC, the ALJ found that there were a significant number of jobs in the national economy which Plaintiff was capable of performing. *Id*. at 17. Accordingly, the ALJ determined that Plaintiff had not been under a disability during the relevant time period. *Id*. at 18.

Plaintiff's contends that there is no substantial evidence supporting the ALJ's decision that he has the RFC to perform light work with the exception that he is limited to simple, routine and repetitive tasks in a low stress environment with occasional production and occasional interpersonal demands. He further contends that VE's testimony does not support the Commissioner's finding that there is other work in the national economy that Plaintiff can perform.

*A. Is there substantial evidence to support the ALJ's findings as to Plaintiff's RFC?*

At Step 4, the ALJ determines the claimant's RFC. This requires the ALJ to evaluate a claimant's ability to do sustained work-related physical and mental activity on a regular basis. In making this finding, the ALJ considers the functional limitations from medically-determinable impairments. Thus, when the medical evidence shows a limitation, the ALJ must factor that into the RFC assessment.

The ALJ's findings were accompanied by a thorough review and assessment of the entire

4

record. This "assessment . . . provides a backdrop for the ALJ's evaluation[s] . . . and provides insight into [them]." *Worden v. Astrue*, 2012 WL 2919923, *5 (E.D.N.C. May 29, 2012), *Report and Recommendation Adopted by*, *Worden v. Astrue*, 2012 WL 2920289. Moreover, the undersigned has reviewed the entire record and finds that the ALJ's determinations were supported by substantial evidence, which shall now be summarized.

*1. Plaintiff's testimony*

At the hearing held on May 24, 2010, Plaintiff testified that he stopped working as a truck driver due to leg pain and falling asleep. (Tr. at 30). He also testified that he is able to drive, but that he limits himself to a 30 mile radius and has to get out to stretch his legs. (*Id*. at 32). Although he stated that he can sit all day, Plaintiff has difficulty sitting in a hard chair such as one made of steel or wood, and that he would become stiff after about 20 minutes. (*Id*. at 32–33). He also stated he could walk around his yard or rake it for 3–4 hours but would experience pain. Plaintiff testified that he can stand, but that standing in one place would be a problem. (*Id*. at 33). He testified that his is able to lift 35–40 pounds. (*Id*.). Plaintiff also stated that his is able to ride his lawn mower for 30 minutes before he needs to get off to stretch. (*Id*. at 34). Plaintiff further testified that he is able to cook, wash clothes and sweep/vacuum. (*Id*.). Plaintiff testified that his blood pressure and diabetes were not under control. (*Id*. at 36-37).

*2. Medical Evidence*

Plaintiff was seen from March, 2004 through July, 2004 by Dr. Donald A. Balder, Jr. of Floyd Medical Associates who diagnosed venous stasis disease of the bilateral lower extremities and performed a VNUS/closure on both legs. Dr. Balder reported that Plaintiff had not post-operative complaints and was doing well.

5

Pee Dee Cardiology Associates performed a stress test on Plaintiff on July 15, 2004 which had normal results. (*Id*. at 148).

Dr. Ralph E. Carter, III of Scotland Orthopaedics examined Plaintiff in August, 2004 for his knee pain. He observed that he had bilateral degenerative joint disease of the knees with greater degeneration in the right knee. (*Id*. at 149). The planned course of treatment was "corticosteriod injections, then possibly Synvise if [his] current program of Glucosamine, Celebrex, Tylenol and Ultracet don't work." (*Id*.). Bracing and total knee replacement surgery were also discussed. (*Id*.).

On February 21, 2005, Plaintiff was seen by Dr. Phillip Wallace of Dillon Internal Medicine Associates and he was diagnosed with diabetes mellitus, arterial hypertension, hyperlipidemia and cardiomyopathy. (*Id*. at 151–52). A follow-up visit on September 28, 2005 noted that his diabetes was stable. (*Id*. at 161–62). Thereafter, on May 8, 2006, Dr. Wallace examined Plaintiff and noted that while his hyperlipidemia was stable, his diabetes was not controlled. A change to the current regimen was made and Plaintiff was encouraged to comply. (*Id*. at 164–65).

The results of a December 26, 2006 sleep study were compatible with obstructive sleep apnea ("OSA"). (*Id*. at 166–67).

Dr. Glenn Harris submitted records from December, 2006 through June, 2009. (*Id*. at 168–91; 227–51). On December 6, 2006, the records note Plaintiff's history of leg pain but that he was able to ambulate well without any problems. (*Id*. at 227). He was diagnosed with hypertension, uncontrolled; non-insulin dependent diabetes mellitus; tobacco addiction; and diabetic peripheral neuropathy. (*Id*.). A follow-up on December 15, 2006 assessed hypertension,

controlled; non-insulin dependent diabetes mellitus; tobacco addiction; diabetic neuropathy; and left leg pain secondary to old injury. (*Id*. at 229).

On February 13, 2007, Dr. Harris noted uncontrolled diabetes and hypertension and noted that Plaintiff need to get his diet under control and stop smoking. (*Id*. at 168). At an April 23, 2007 follow-up appointment, Dr. Harris noted diabetes, hypertension and hypercholesterolemia and performed blood work. (*Id*. at 169). Plaintiff was seen again on August 24, 2007, the assessment was the Plaintiff had hypertension; non-insulin dependent diabetes; and mild dyslipidemia. The records also note Plaintiff walked with a limp due to some trauma to his left leg, where some edema was also noted. (*Id*. at 170). On October 24, 20007, the Dr. Harris observed that hypertension; non-insulin dependent diabetes mellitus type 2; dyslipidemia; diabetic peripheral neuropathy; and mild edema in his left leg. (*Id*. at 171).

A January 22, 2008 appointment noted good range of movement in his extremities, with no edema present, and assessed hypertension; non-insulin dependent diabetes mellitus type 2; dyslipidemia; and diabetic peripheral neuropathy. (*Id*. at 173). During a follow-up visit on April 29, 2008, Plaintiff was ambulating with a limp and was again diagnosed with hypertension; non-insulin dependent diabetes mellitus type 2; dyslipidemia; left knee pain with degenerative joint disease; and peripheral vascular disease. (*Id*. at 175). On May 12, 2008, the medical records not that Plaintiff was started on insulin and that he was having a lot of trouble with his legs. (*Id*. at 176). Notes from a June 3, 2008 appointment found uncontrolled diabetes mellitus, type 1 without complications; osteoarthritis; and essential hypertension, benign. (*Id*. at 184–85). The notes also state that his osteoarthritis symptoms go away with rest. (*Id*. at 184.).

Thereafter, the June 23, 2008 medical records state that Plaintiff had discontinued

7

insulin, was not checking his glucose levels three times per day and was not taking his pills as directed. (*Id*. at 183). On August 12, 2008, Plaintiff was again seen and complained of foot pain and assessed as having essential hypertension, benign; unspecified hyperlipidemia; uncontrolled diabetes mellitus, type II (or unspecified type) and polyneuropathy in diabetes, feet. (*Id*. at 187). On September 23, 2008, Dr. Harris determined Plaintiff had essential hypertension, benign; unspecified hyperlipidemia; and uncontrolled diabetes mellitus, type II (or unspecified type). (*Id*. at 189). On December 23, 2008, Plaintiff was found to have the same conditions as well as epididymis. (*Id*. at 248). Plaintiff was seen next on February 19, 2009 and assessed as having essential hypertension, benign; unspecified hyperlipidemia; uncontrolled diabetes mellitus, type II (or unspecified type). (*Id*. at 250).

Dr. Morton Meltzer with the North Carolina Department of Health and Human Services performed a consultative exam. (*Id*. at 192–94). In a report issued on November 28, 2008, Plaintiff was noted as having a history of marijuana use and assessed as having depression and chronic dysthymia; hypertension, adult onset diabetes mellitus, injury involving his left ankle and lower left extremity and probable peripheral neuropathy. (*Id*. at 194). Dr. Meltzer gave Plaintiff a Global Assessment Functioning ("GAF") score of 60, which indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. (*Id.*).

Dr. Tovah Wax performed a state psychological consult on December 2, 2008 and opined that Plaintiff had mild limitations in activities of daily living and social functioning; moderate limitations in concentration, persistence and pace; and no episodes of decompensation. (*Id*. at 210). Dr. Wax determined that Plaintiff was able to understand and remember both simple and complex instructions; able to maintain a level of attention and concentration required to perform

8

simple and complex tasks in a low production environment; able to appropriately interact with others in a work environment with minimal interpersonal demands; and able to adapt to changes in a low production workplace setting with minimal interpersonal demand. (*Id*. at 198).

Thereafter, Plaintiff was seen by Dr. Jack Drummond, a state medical consultant, who opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; could sit for s 6 hours in an 8-hour workday; and could stand/walk fo 6 hours in an 8-hour workday. (*Id*. at 273).

Based on the medical record as a whole, the ALJ concluded that Plaintiff's had the RFC to perform light work (as defined in 20 C.F.R. 404.1567(b)) with the following limitations: lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently; sitting for up 6 hours in an 8-hour workday with normal breaks; and standing or walking for up to 6 hours in an 8-hour workday with normal breaks. *Id*. Plaintiff was also found to be able to perform simple, routine and repetitive tasks in a low stress environment with occasional production and occasional interpersonal demands. *Id*. This RFC assessment contains greater limitations that supported by the medical evidence. For example, despite a lack of mental health treatment, the ALJ gave greater consideration to Plaintiff's lowered tolerance for frustration by limiting his RFC to a low stress environment. (*Id*. at 16). Also, despite a finding that he could lift 35–40 pounds, the ALJ limited his ability to lift/carry to 20 pounds occasionally and 10 pounds frequently. (*Id*.). Plaintiff generally asserts that the ALJ failed to take into account his other limitations, but he fails to identify which alleged impairments that are supported by the medical evidence of record have not been properly considered. Accordingly, this argument lacks merit.

*3. Credibility*

9

Plaintiff contends that the ALJ incorrectly assessed his credibility. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

The regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; *Craig*, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); *Craig*, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See Craig*, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, at *4. Ultimately, the ALJ's findings with regard to a claimant's credibility must

10

Case 7:12-cv-00286-FL   Document 24   Filed 10/17/13   Page 10 of 17

"contain specific reasons . . . supported by evidence in the case record." *Id*. at *2.

Plaintiff takes exception with the ALJ's assessment that he was not fully credible. He alleges that the ALJ failed to provide specific reasons for his credibility determination. Plaintiff also argues that the ALJ failed to consider Plaintiff's specific statements of his impairments.

Social Security Ruling 96-7 provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7, 61 Fed. Reg. 34483-01. In his decision, the ALJ stated: "The undersigned finds the [Plaintiff's] allegations partially credible. The [Plaintiff's] testimony does not indicate impairments that were so debilitating that they prevented [Plaintiff] from performing work activity." (Tr. at 14). Plaintiff asserts that this single, conclusory statement fails to fulfill the requirements of SSR 96-7. However, Plaintiff fails to note that the ALJ's decision went on to expound the reasons why he was found only partially credible. Specifically, the ALJ noted that Plaintiff's complaint of leg pain did not support a finding of disability. (*Id*. at 15). Treatment notes indicated occasions when Plaintiff had no complaints of leg pain. (*Id*.). Although he presented with limping, edema and knee tenderness on occasion, the treatment notes also indicate that Plaintiff had a good range of motion, no edema or tenderness nor walking problems on most visits. (*Id*.).

As to his hypertension and cardiomyopathy, Dr. Harris found these conditions benign.

11

(*Id.*) Additionally, a stress test in June, 2004 was negative. (*Id.*). With respect to his diabetes, the ALJ noted that the Plaintiff was not always compliant with treatment, as various medical sources noted that he had not been taking his medications correctly, that he had not been checking his glucose three times a day, and he was noncompliant with his daily diabetic regimen. (*Id.*).

Despite his claims of sleep apena, the ALJ found that the record did not evidence symptoms of fatigue at a severity and frequency that would prevented him from performing work activity within his RFC. (*Id.*). Additionally, although Plaintiff claimed depression, the record contained treatment records from mental health professionals. (*Id.*). Moreover, the state consultive examiners concluded Plaintiff could understand, retain and follow instructions and sustain attention to perform simple, repetitive tasks; and that he was able to understand and instructions; able to maintain a level of attention and concentration required to perform tasks; able to appropriately interact with others; and able to adapt to changes. (*Id.*).

Accordingly, the ALJ properly evaluated Plaintiff's reported impairments in light of the evidence of record. In sum, the ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. The ALJ properly assessed Plaintiff's credibility and thoroughly supported his determination with specific reasons, citing how Plaintiff's testimony was not supported by the evidence of record. Consequently, the ALJ's determination regarding Plaintiff's credibility will be afforded the deference due to it. Accordingly, this assignment of error is without merit.

*4. Third party statements*

12

In addition to acceptable medical sources, Social Security may use evidence from other sources, including spouses, to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03P, 2006 WL 2329939. In considering evidence from non-medical sources, such as a spouse in the instant matter, it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. *Id*.

Plaintiff's wife, Mahetta Rena Manning-Commedo, provided a Third Party Function Report. (Tr. 111–18). She described his abilities and impairments, stating that his leg pain and sleep apnea affect his sleep; that he can prepare meals, do laundry, mow the lawn and shop; he plays cards and watches television; he has a difficult time squatting, bending, walking, kneeling climbing stairs and rising from a chair; and that he has become depressed over not being able to work. (*Id*.). She also stated that he would sometimes use a cane. (*Id*. at 117).

Although Plaintiff contends that the ALJ failed to properly consider these third party statements, it is clear, based on the medical evidence of record set forth above, that such statements were not wholly supported by the record. For example, while the third party statement reports that Plaintiff had difficulty walking, medical reports show a good range of motion and the absence of gait abnormalities. Moreover, while his wife testified that he used a cane on occasion, there is no medical evidence of record indicating that Plaintiff was observed using a

13

cane or that his condition required one. Consequently, there is substantial evidence to support the ALJ's assessment and findings, and the third party statement was considered to the extent it was supported by other evidence.

In sum, there is substantial evidence to support the ALJ's determination as to Plaintiff's RFC. Specifically, the medical evidence was properly weighed and supports a finding that Plaintiff is capable of performing light work, with restrictions. Plaintiff has failed to demonstrate that the ALJ erred in finding him not fully credible. Finally, the ALJ, in making a determination as to Plaintiff's RFC, considered all impairments and limitations. Although Plaintiff may disagree with the determinations made by the ALJ, after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. *Craig*, 76 F.3d at 589. Thus, Plaintiff's objections to the ALJ's analysis at Step 4 are without merit.

B.  *Does the VE's testimony support the finding that there are jobs Plaintiff is capable of performing?*

While a claimant has the burden at Steps 1–4, it is the Commissioner's burden at Step 5 to show that work the claimant is capable of performing is available. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). At Step 5, the Commissioner must establish both that the claimant has the capacity to perform an alternative job, considering his or her age, education, skills, work experience, and physical shortcomings and also that such a job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir.1976).

Plaintiff argues that the ALJ erred at Step 5 by relying on the testimony of the VE. Relying on his prior argument, he contends that the hypothetical questions posed to the VE failed

14

to take into account all of his impairments and accurately depict his RFC. He also asserts that, even if his RFC were properly assessed and described, the jobs identified by the VE are not within the parameters of that RFC.

*1. Hypothetical questions*

An ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (unpublished opinion). The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ." *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000). Here, the hypothetical question posed to the VE by the ALJ was based on a RFC determination supported by substantial evidence and therefore accurately reflected all of Plaintiff's limitations. In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

As Defendant points out, Plaintiff does not make a specific assertions as to which limitations have been established regarding his RFC that were not included in hypothetical questions posed to the VE. Moreover, as noted above, the ALJ properly determined Plaintiff's RFC in light of all the evidence. The hypothetical questions posed to the VE properly represented Plaintiff's abilities and limitations. Accordingly, there is substantial evidence to support a finding that the hypothetical questions posed to the VE properly accounted for all of Plaintiff's abilities and limitations.

15

### 2. Jobs compatible with Plaintiff's RFC

As to the jobs available that Plaintiff was found capable of performing, the VE identified three positions—electrical accessory assembler, nut and bolt assembler and storage facility rental clerk—that, with the limitations of his RFC, Plaintiff was capable of holding. (Tr. at 17–18.). Plaintiff argues that these positions are incompatible with his RFC.

Plaintiff first contends that the assembly jobs do not conform with his RFC, which limits his work to jobs requiring only occasional production demands. The VE testified that all assembly jobs have a production standard but that these positions have a lower pace production standard. (*Id*. at 15). However, although the pace may be slower, these jobs do not appear to require "occasional" production but consistent production, even if it is a slower pace. The Defendant has not addressed the specific DOT requirements for these assembly positions or specifically identified how the production demands of these positions are not inconsistent with Plaintiff's RFC. Consequently, as there is doubt whether the assembly positions are consistent with Plaintiff's RFC, the Commissioner has failed to carry its burden on Step 5 as to these positions.

Plaintiff further maintains that the clerk job requires a significant amount of speaking-signaling, which is inconsistent with his RFC that allows only for occasional interpersonal demands. Defendant does not make an argument on the storage facility retail clerk position and merely argues that, inasmuch as the Commissioner has identified other jobs in the national economy, *to wit*., electrical accessory assembler and nut and bolt assembler, that Plaintiff is capable of performing, it has satisfied its burden. Having concluded that those positions fall outside of Plaintiff's RFC and, further, as it appears that the storage facility retail clerk position,

16

with its significant speaking/signaling requirement, is incompatible with Plaintiff's RFC having a limitation of occasional interpersonal demands, no positions which are compatible with Plaintiff's RFC have been identified. Accordingly, the Commissioner has failed to carry its burden at Step 5 by identifying jobs in the national economy that Plaintiff is capable of performing. Thus remand on this issue is warranted.

## IV. CONCLUSION

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 19) be GRANTED, that Defendant's Motion for Judgment on the Pleadings (DE 21) be DENIED, and that the matter be REMANDED for further proceedings consistent with the foregoing analysis.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on October 17, 2013.

WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE